UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAIMLERCHRYSLER CORP.,

    Plaintiff(s),

v.

TUREGUM INS. CO., ET AL.,

    Defendant(s).
_____/

Case No. 02-73087

Honorable Nancy G. Edmunds

**OPINION AND ORDER DENYING DEFENDANT LEXINGTON INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT [71]**

Presently before the Court is Defendant Lexington Insurance Company's ("Lexington") motion for summary judgment. This motion requires the Court to determine if the phrase "Ultimate Net Sum Payable" in the parties' contract included a prejudgment interest award. The Court finds that it does and, for the reasons set forth more thoroughly below, DENIES Lexington's motion.

**I.    Background[1]**

Plaintiff DaimlerChrysler Corporation ("DaimlerChrysler"), an automobile manufacturer, was sued in a Massachusetts state court in 1992 ("the Santos litigation"). A jury eventually found DaimlerChrysler liable for $12.2 million in compensatory damages and $15,705.00 in punitive damages. After an unsuccessful appeal, DaimlerChrysler paid

---

[1] In its previous order denying the parties' motions for summary judgment, the Court set forth the facts in detail. For purposes of the present motion, the only disputed issue is the interpretation of a contract–the existence of which and language therein is not contested. Thus, it is only necessary to provide a cursory review of the factual background and set forth the specific contract language at issue.

$25,948,394.74 to the plaintiff. This amount included pre- and post-judgment interest. The amount of compensatory damages, punitive damages, and pre-judgment interest sums to over $18.9 million.

DaimlerChrysler has a layered insurance program. It brought this action against some of the insurers that provide coverage at different levels. Lexington's policy provides $5 million of coverage, but does not attach unless the "Ultimate Net Sum Payable" exceeds $15 million. Lexington has brought a motion for summary judgment arguing that its policy is not implicated because the amount of compensatory and punitive damages did not exceed $15 million. DaimlerChrysler, on the other hand, argues that the "Ultimate Net Sum Payable" includes the amount of pre-judgment interest and therefore Lexington's policy did attach.

In the parties' contract, the term "Ultimate Net Sum Payable" is defined as follows:

> The words "Ultimate Net Sum Payable", wherever used in this Policy, mean the total sum the Insured is obligated to pay, either through adjudication or compromise, as damages in respect of any Loss that would . . . be covered by this Policy.
>
> The following shall not be included within the meaning of Ultimate Net Sum Payable: -
>
> (a)  such costs and any other expense which the Insured or any insurer has paid or is obligated to pay as respects the Underlying Amounts;
> (b)  salaries of the Insured's or any insurers' permanent employees[;]
> (c)  investigative, adjustment, appraisal, legal, appeal and defense costs.

(Lexington's Ex. A "Insurance Policy" at Endorsement No. 25.)

## II. Standard of Review

Summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A district court faced with a summary judgment motion must view all evidence and the inferences to be drawn

2

> therefrom in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The critical inquiry for a district court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

*Miller v. Calhoun County*, 408 F.3d 803, 811-12 (6th Cir. 2005).

### III.  Analysis

There are policy matters which have driven court decisions regarding allocation of interest amongst insurers and the extent to which insurers are liable for interest beyond their policy limits. Many of these cases are cited and relied upon by both parties. The policy implications are not the present issue before the Court however. Instead, it must be determined whether *this contract* includes pre-judgement interest in the "Ultimate Net Sum Payable." This is purely a matter of interpretation.

The definition of this phrase, aside from the three exclusions, is not especially helpful. The "Ultimate Net Sum Payable" is simply "damages in respect of any Loss that would . . . be covered by this Policy." This language requires the reader (and the Court) to look elsewhere in the Policy to determine what is covered.

In paragraph 1 of the "Insuring Agreements" section of the contract, the "Coverage" is expressed in further detail:

> [Lexington] will indemnify [DaimlerChrysler] for that amount of the Ultimate Net Sum Payable which [DaimlerChrysler] shall be obligated to pay by reason of the liability: -
>
>     (a)    imposed upon [DaimlerChrysler] by law,
> or  (b)    assumed by [DaimlerChrysler] under contract or agreement,
>
> for damages on account of: -
>
>     (i)    Personal Injuries,

> (ii)   Property Damage,
> (iii)  Advertising Injury,
>
> resulting from each Loss . . . .

(Insurance Policy at 1.)

According to the plain language of the contract, Lexington will pay for DaimlerChrysler's "liability imposed . . . by law . . . for damages on account of Personal Injuries [or] Property Damage . . . ."  In the Santos litigation, the judge applied MASS. GEN. L. ch. 231, § 6B.  This statute imposes pre-judgment interest on the defendant if there is a judgment for "pecuniary damages for personal injuries," "consequential damages," or "damage to property."  MASS. GEN. L. ch. 231, § 6B.  Thus, the pre-judgment interest was a liability imposed by law.

The next question is whether pre-judgment interest falls within the classification of "damages on account of Personal Injuries [or] Property Damage . . . ."[2]  The term "damages" is not defined in the contract.  (*See* Insurance Policy at 3-7.)  Likewise, the term "costs"–which is explicitly excluded from the "Ultimate Net Sum Payable" as noted in its definition above–is not explained.

Some courts faced with this exact issue have concluded that "damages," without further elaboration in the contract, is the amount entered by the clerk of the court, not the amount of the jury verdict.  *See, e.g., Mayer v. Med. Malpractice Joint Underwriting Ass'n of Mass.*, 663 N.E.2d 274, 277 (Mass. App. Ct. 1996); *Factory Mut. Liab. Ins. Co. v.*

---

[2] The third possibility listed in the policy–"Advertising Injury"–is clearly not implicated in the present suit.

*Cooper*, 262 A.2d 370 (R.I. 1970).  In this case of contract interpretation, however, Michigan law is controlling.

In *Dittus v. Geyman*, 242 N.W.2d 800, 802 (Mich. Ct. App. 1976), the insurance contract at issue provided that "the insured shall become legally obligated to pay as damages because of [ ] bodily injury . . . ."  Also, in a "Supplemental Payments" provision, the insurer agreed to pay "all costs" from suits brought against the insured and "all interest on the entire amount of any judgment therein which accrues after entry of the judgment . . . ."  *Id.*  The court first held that interest provision did cover post-judgment interest, but not pre-judgment interest.  *Id.*  It then found that pre-judgment interest was not specifically provided for as a "cost" under Michigan's statutory scheme and therefore was not classified as such under the contract.  *Id.* at 803.[3]  The court then addressed whether pre-judgment interest was included as a component of the "damages:"

> The distinction between interest on a judgment and interest as an element of damages had been often noted.  The former is computed and added to the general verdict.  The latter is awarded by the jury as an element of damages.  Prejudgment interest from the date of the complaint is purely statutory and is computed and added to the general verdict.  Prejudgment interest is not an element of damages covered by the bodily injury liability provisions.

*Id.* (citing Michigan cases and statutes).[4]

---

[3] Lexington cited to the exclusion from the "Ultimate Net Sum Payable."  The exclusion is for "costs and any other expenses" that DaimlerChrysler became "obligated to pay as respects the Underlying Amounts."  The holding from *Dittus* does not support their argument that pre-judgment interest is a "cost."  And, in any event, no definition of "Underlying Amounts" is provided.  Thus, it is not clear what would be "any other expense[ ] . . . as respects the Underlying Amounts."  Lexington's argument therefore is without merit.

[4] Lexington also relies on a number of other cases, including *Denham v. Bedford*, 287 N.W.2d 168 (Mich. 1980).  However, this case addressed an entirely different issue: "whether an insurer can be obligated by [MICH. COMP. LAWS § 600.6013] to pay as interest

5

This reasoning is not persuasive. The court's conclusion amounts to an interpretation of the parties' intent about "damages," as written in their contract, based on the statutory nature and history of pre-judgment interest in Michigan. However, "[i]nsurance contract language is given its ordinary and plain meaning to avoid a technical or strained construction." *Farm Bureau Mut. Ins. Co. of Michigan v. Moore*, 475 N.W.2d 375, 377 (Mich. Ct. App. 1991)(citation omitted).

"Damages" constitute "[m]oney claimed by, or ordered to be paid to, a person as compensation for loss or injury." BLACK'S LAW DICTIONARY (8th ed. 2004); *see also* THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (4th ed. 2000)(using same definition). Pre-judgment interest is compensation. In addition, it was ordered to be paid because of the underlying loss–*i.e.*, it is compensation that puts the plaintiff in the same position he was before the loss occurred. *See, e.g., Monessen Southwestern Ry. Co. v.*

---

sums of money over and above the contractual limitations of an insurance policy." *Id.* The court answered this question in the affirmative. *Id.* at 175. It did not opine whether pre-judgment interest should be classified as "damages" in a contract which does not define that term. Moreover, the court was interpreting a *Michigan statute* and, in this case, a *Massachusetts statute* required pre-judgment interest to be added.

Likewise, Lexington's reliance on *Matich v. Modern Research Corp.*, 420 N.W.2d 67 (Mich. 1988) is misplaced. The *Matich* court addressed questions that do not shed light on the present contract interpretation issue: (1) as between different insurers, the interest on a judgment shall be apportioned pro rata, *id.* at 74; (2) "[a]n insurer whose policy includes the standard interest clause is required to pay prejudgment interest from the date of filing of a complaint until the entry of judgment, calculated on the basis of its policy limits, not on the entire judgment[,]" *id.* at 76; but (3) the insurers in that case, by the terms of their agreement, "assumed the obligation to pay postjudgment interest on the entire amount of the judgment," *id.* at 78. The *Matich* court repeated the *Denham* rule that an insurer may be liable for this amount of interest that exceeds the policy limit. *Id.* at 76, 78.

Lexington also cites to *Cochran v. Auto Club Ins. Ass'n*, 425 N.W.2d 765 (Mich. Ct. App. 1988). The Court notes that these cases are not directly relevant to the present inquiry because they address the allocation of interest once a policy has been implicated; they do not examine whether interest can implicate a policy.

*Morgan*, 486 U.S. 330, 335 (1988)("Prejudgment interest is normally designed to make the plaintiff whole and is part of the actual damages sought to be recovered.")(citations omitted).

This second part of the dictionary definition–whether it was "compensation for [the] loss"–is addressed separately in the policy here.  Specifically, the contract states that Lexington will be liable for "damages *on account of*[,]" for example, "Personal Injuries."[5] As noted above, the pre-judgment interest awarded was on account of the personal injuries (which gave rise to the Santos litigation) because the two are directly linked.  Thus, the Court holds that pre-judgment interest fell within the coverage of the contract here.[6]  The Court does not find that the Michigan Supreme Court would strictly construe *Dittus v. Geyman*, a court of appeals case, to every contract that contains the word "damage."

---

[5]  The Rhode Island Supreme Court was faced similar language.  There, the insurance policy provided that "the insurance company promises to pay on behalf of the insured, up to the policy limits, only 'all sums which the insured shall become legally obligated to pay as damages.'" *Cooper*, 262 A.2d at 373.  It interpreted this language as follows:

> What "sums" did the insured become legally obligated to pay as "damages" within the language of this clause?  The insureds became legally obligated to pay the total amount of all the verdicts returned by the jury against them. In addition, by virtue of the [Rhode Island statute], they became legally obligated to pay interest thereon from the date of commencement of the action.  This prejudgment interest is thus included in the judgments. Therefore, these judgments represent the sums which the insureds were "legally obligated to pay as damages" . . . .

*Id.*

[6]  Alternatively, the Court notes that if it were to find that "the policy is ambiguous, the policy w[ould] be construed against the insurer and in favor of coverage." *Shefman v. Auto-Owners Ins. Co.*, 687 N.W.2d 300, 303 (Mich. Ct. App. 2004)(citing *Heniser v. Frankenmuth Mutual Ins. Co.*, 534 N.W.2d 502 (1995)).

Lexington cites to numerous cases where the courts interpreted Michigan's pre-judgment interest statute and/or made holdings based on the policies behind it. *See* note 3 *supra*. For example, the Michigan Supreme Court in *Matich v. Modern Research Corp.* held that the amount of pre-judgment interest an insurer must pay is calculated based on policy limits, not on the entire judgment. 420 N.W.2d at 76. Lexington asks the Court to make the following inference based on this holding: because the amount is calculated based on the verdict, pre-judgment interest is *only* the responsibility of the insurers whose policies are reached by that verdict. This rule contorts the *Matich* court's holding well beyond the facts of that case to a situation that was obviously not contemplated. The issue here is one of contract interpretation and, as noted above, pre-judgment interest is covered under the policy. The *Matich* holding does not mandate a different result.[7]

### IV.   Conclusion

For the reasons stated above, the Court hereby orders that Lexington's motion for summary judgment is DENIED.


　　　　　　　s/Nancy G. Edmunds
　　　　　　　Nancy G. Edmunds
　　　　　　　United States District Judge

Dated:  July 21, 2005

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 21, 2005, by electronic and/or ordinary mail.

　　　　　　　s/Carol A. Hemeyer

---

[7] Lexington also contends that it is not liable for the post-judgment interest and punitive damages if the finder of fact were to find that it was otherwise liable. As noted in the Court's previous orders, the issue of damages is not ripe for consideration.

Case Manager